STATE OF NORTH CAROLINA v. JOHN BANGLE CORL, DEFENDANT, AND RUTHERFORD LEROY CORL AND ELIZABETH FLYNN CORL, SURETIES

No. 8119SC1393

(Filed 6 July 1982)

**Arrest and Bail § 11— sureties' liability on appearance bonds ended at entry of judgment**

> Where one condition of an appearance bond was that defendant "shall appear . . . whenever required and will at all times render himself amenable to the orders and processes of the Court," and where the bond further provided that "this bond is effective and binding upon the obligors throughout all stages of the proceedings in the trial divisions . . . *until the entry of judgment in the superior court,*" the sureties' liability upon the bond terminated upon entry of judgment in the superior court, and the trial court erred in holding the sureties liable on their bond for the defendant's failure to submit himself for commitment upon his release from medical treatment.

APPEAL by sureties from *Washington, Judge.* Judgment entered 16 October 1981 in Superior Court, CABARRUS County. Heard in the Court of Appeals 9 June 1982.

On 10 April 1980 defendant John Bangle Corl was arrested on criminal charges. His appearance bond, executed by Rutherford L. Corl and Elizabeth Flynn Corl as sureties, provided in pertinent part as follows:

Pretrial Release—The conditions of this bond are that the above named defendant shall appear in the above entitled action whenever required and will at all times render himself amenable to the orders and processes of the Court. It is agreed and understood that this bond is effective and binding upon the obligors throughout all stages of the proceedings in the trial divisions of the General Court of Justice until the entry of judgment in the district court from which no appeal is taken *or until the entry of judgment in the superior court.*

. . . .

If the defendant appears as ordered and otherwise obeys and performs the foregoing conditions of this bond, then this bond is to be void, but if the defendant fails to obey or perform any of these conditions, the court will enter an order declaring the bond forfeited. [Emphasis supplied.]

On 23 January 1981 defendant pled guilty to two charges. He received an active sentence on one and a suspended sentence with probation on the other.

Because defendant wished to obtain medical treatment and to secure medical records before commitment, Judge Davis ordered "that the Sheriff commit defendant, effective March 2, 1981." On that date Judge Davis was advised that defendant was hospitalized, and he ordered that "[c]ommitment be held until such time, from day to day, as defendant is released from the hospital."

Defendant did not appear for commitment upon his release. Orders for his arrest were issued, and he was arrested on 25 September 1981.

On 17 August 1981 an order of forfeiture on the appearance bond was served on the sureties. They moved to dismiss, and a hearing was held. On 16 October 1981 Judge Washington entered judgment holding the sureties liable on their bond for the defendant's failure to submit himself for commitment.

From this judgment, the sureties appeal.

*Attorney General Edmisten, by Assistant Attorney General Sandra M. King, for the State.*

*Kenneth W. Parsons for surety appellants.*

WHICHARD, Judge.

For authority on the duration of a surety's liability on an appearance bond, *see generally* Annot., 20 A.L.R. 594 (1922); 8 Am. Jur. 2d, Bail and Recognizance, §§ 104-110 (1980 & Cum. Supp. 1981). While the authorities set forth do not necessarily control because of the express language of the bond here, we review them briefly for the purpose of placing this case in the context of topical decisions.

In *United States v. Miller*, 539 F. 2d 445 (5th Cir. 1976), and *United States v. Wray*, 389 F. Supp. 1186 (W. D. Mo. 1975), defendants were sentenced to imprisonment but allowed a short stay of commitment. They then failed to appear as ordered. Their bonds required each defendant to "abide any judgment entered . . . by surrendering himself to serve any sentence imposed and obeying any order or direction in connection with such judgment as the court imposing it may prescribe." In each case the court held the failure to appear for commitment came within the terms of the bond, and the surety was thus liable.

In *United States v. Gonware*, 415 F. 2d 82 (9th Cir. 1969), the court observed that a bail bond, like any other contract, should be construed to give effect to the reasonable intentions of the parties. It then stated:

> [I]t is a common practice in the federal courts as well as the state courts, for defendants to request and for courts to grant short stays of execution of sentence to allow defendants to put their affairs in order before they start to serve their sentence. . . . Given this widespread practice, it is reasonable that the parties to this bail bond intended that the surety would remain liable during a reasonable stay of execution of the sentence.

*Id.* at 84.

In *United States v. D'Anna*, 487 F. 2d 899 (6th Cir. 1973), judgment against the surety was reversed. The court ruled that Michigan law controlled; and it found that the Michigan Supreme Court had ruled, in a case involving a similar bond, that the surety's liability terminated when sentence was imposed and could not be extended except upon consent.

It appears the weight of authority that unless the bond includes a condition requiring the defendant to abide the final order or judgment of the court or, if convicted, to render himself in execution thereof, the surety's liability terminates upon pronouncement of judgment. *Annot.*, 20 A.L.R. 594, § XVI. The rationale is that sentencing removes the defendant from the custody of the surety and returns him to the custody of the law. *See* 8 Am. Jur. 2d, Bail and Recognizance, § 110.

On the basis of *State v. Schenck*, 138 N.C. 560, 49 S.E. 917 (1905), North Carolina is cited as holding counter to this general rule. The bond there was conditioned on the defendant's appearance to answer the charges, and it provided that he was "not to depart the same without leave first had and obtained." *Id.* at 560, 49 S.E. at 917. Upon conviction defendant appealed, but failed to give the undertakings required for appeal or to appear at the next term of court. Judgment was entered against the sureties, and they appealed. Our Supreme Court upheld the sureties' liability, stating:

> It is said by the highest authority that a recognizance (or bail bond) in general binds to three things: (1) to appear and answer either to a specified charge or to such matters as may be objected; (2) to stand and abide the judgment of the court; and (3) not to depart without leave of the court; and that each of these particulars are distinct and independent. This was said, too, with reference to a bail bond worded precisely like the one in this case. . . . The conviction does not, by virtue of its own force, put the defendant in the custody of the court or of the sheriff. This is done, in our practice at least, by an order from the court, given of its own motion or on application of the solicitor, and the court, when it passes judgment upon a defendant and he appeals, can direct that he be not taken into custody immediately . . . .
>
> . . . .
>
> We conclude that the recognizance binds the sureties for the continued appearance of their principal, from day to day, during the term and at all stages of the proceeding, until he is finally discharged by the court, either for the term or without day. He must answer its call at all times and submit to its judgment.

*Id.* at 562-65, 49 S.E. at 918-19; *accord, State v. Hutchins,* 185 N.C. 694, 116 S.E. 740 (1923); *State v. Eure,* 172 N.C. 874, 89 S.E. 788 (1916).

Our Supreme Court thus has viewed the surety's undertaking in broad terms. Prior North Carolina cases did not, however, consider bonds with language identical to that of the bond here; and liability "must be determined by the conditions of the bond in question." *State v. Mallory,* 266 N.C. 31, 42, 145 S.E. 2d 335, 343 (1965), *cert. denied,* 384 U.S. 928, 16 L.Ed. 2d 531, 86 S.Ct. 1443 (1966).

An appearance bond is a contract of the defendant and the surety with the State. *See Gonware, supra,* 415 F. 2d at 83. General rules for construction of contracts thus determine liability thereon. A contract must be construed as a whole, considering each clause and word with reference to other provisions and giving effect to each if possible by any reasonable construction. *Robbins v. Trading Post,* 253 N.C. 474, 477, 117 S.E. 2d 438, 440-41 (1960). The heart of a contract is the intention of the parties as determined from its language, purposes, and subject matter, and the situation of the parties at the time of execution. *Adder v. Holman & Moody, Inc.,* 288 N.C. 484, 492, 219 S.E. 2d 190, 196 (1975).

The condition of the bond here that defendant "shall appear . . . whenever required and will at all times render himself amenable to the orders and processes of the Court" makes the bond a continuing obligation. *See* 8 Am. Jur. 2d, Bail and Recognizance, § 104. Further language, however, provides that "this bond is effective and binding upon the obligors throughout all stages of the proceedings in the trial divisions . . . *until the entry of judgment in the superior court."* (Emphasis supplied.) Construing the bond as a whole, the continuing obligation imposed by the requirement that defendant appear "whenever required" and render himself amenable to court orders "at all times" must be considered in light of the further provision that the bond binds the obligors only "until the entry of judgment in the superior court." To interpret the continuing obligation as terminating upon entry of judgment gives effect to both provisions.

Further, the situation of the parties changes upon entry of judgment. If, as here, the judgment is one of imprisonment, de-

fendant's hope for acquittal or a non-incarcerative sentence terminates at that point. Such termination materially increases the risk of defendant's flight. There is logic in the contention that this increased risk is not within the contemplation of the surety when the bond contract is entered and thus should not be imposed without his specific consent. *See Miller, supra,* at 448.

We conclude that the express terms of the bond, and of G.S. 15A-534(h) from which said terms were derived *in haec verba,* dictate a holding that the sureties' liability terminated upon entry of judgment in the superior court. This occurred on 23 January 1981. The trial judge announced sentence on that date, and the records of the clerk filed with this Court show that she recorded judgment and that the session ended on that date. Because 23 January 1981 preceded defendant's failure to appear for commitment, which occurred sometime after his release from the hospital on 2 March 1981, the sureties may not be held liable on the bond.

A stay of commitment is appropriate and customary under certain circumstances. Provision should be made, however, to assure the defendant's appearance when ordered. G.S. 15A-534 and bonds entered pursuant thereto do not make such provision. The General Assembly may wish to revise the statute. Pending any such revision, consent of the parties to modification of the suretyship contract for the purpose of extending liability through any period during which commitment is stayed may best insure the appearance when ordered of the beneficiaries of such stays.

Reversed.

Judges CLARK and WEBB concur.